ACCEPTED
04-15-00255-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/7/2015 3:09:13 PM
KEITH HOTTLE
CLERK

<u>ORAL ARGUMENT REQUESTED</u>

No. 04-15-00255-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

10/7/2015 3:09:13 PM

KEITH E. HOTTLE
Clerk

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

SW Loan A, L.P.,
Appellant,

vs.

Anibal J. Duarte-Viera, Antonio P. Pardo, and
Edward M. Reiss,
Appellees.

**BRIEF OF THE APPELLEES**

On Appeal from the 131st District Court
Bexar County, Texas
Cause No. 2012-CI-12742

Brian P. Lauten, Esq.
State Bar No. 24031603
blauten@deanslyons.com
DEANS & LYONS, LLP
325 N. St. Paul St., Ste. 1500
Dallas, Texas 75201
(214) 965-8500 telephone
(214) 965-8505 facsimile

1

## SUPPLEMENTAL IDENTITY OF APPELLATE
## COUNSEL FOR THE APPELLEES

**Appellees' Appellate Counsel:**

Brian P. Lauten, Esq.

State Bar No. 24031603

blauten@deanslyons.com

**DEANS & LYONS, LLP**

325 N. St. Paul St., Ste. 1500

Dallas, Texas 75201

(214) 965-8500 telephone

(214) 965-8505 facsimile

# TABLE OF CONTENTS

SUPPLEMENTAL IDENTITY OF APPELLATE COUNSEL.......................................................2

TABLE OF CONTENTS ...............................................................................................3

INDEX OF AUTHORITIES............................................................................................5

ISSUES PRESENTED ..................................................................................................8

STATEMENT OF FACTS.............................................................................................10

   A. Procedural and Factual Background of the Litigation...............................10

   B. Appellant failed to Meet its Burden of Proof ............................................15

      1. Documentary Evidence Important to Appellant's Burden were not admitted into evidence.............................................................15

      2. A Reasonable Jury could have found there was no Default......16

      3. Appellant's liability and damages witness had no personal knowledge of the transaction and could not verify the amount allegedly owed ......................................................................17

SUMMARY OF THE ARGUMENT.................................................................................22

STANDARD OF REVIEW ...........................................................................................23

   A. Factual Sufficiency.................................................................................23

   B. Legal Sufficiency ...................................................................................24

   C. Attorney's Fees under the Declaratory Judgment Statute....................25

ARGUMENT & AUTHORITIES.................................................................................26

    A.  Appellant failed to prove the Amount due on the Note at the time of Foreclosure .................................................................................26

    B.  A Reasonable Jury could have Concluded there was no Default.........31

    C.  The Standard of Review is dispositive .................................................33

        1.  There is factually sufficient Evidence.........................................33

        2.  There is legally sufficient Evidence .............................................35

    D.  The trial court acted within its discretion in awarding Attorney's Fees.................................................................................36

PRAYER FOR RELIEF.................................................................................38

CERTIFICATE OF COMPLIANCE.................................................................................39

CERTIFICATE OF SERVICE .................................................................................40

CASE-LAW:

*Bocquet v. Herring*,
972 S.W.2d 19, 21 (Tex. 1998)....................................................................36

*Carruth Mortgage Corp. v. Ford*,
630 S.W.2d 897, 899 (Tex. App. -- Houston [1st Dist.] 1982, no pet. h.).19, 26, 30

*City of Keller v. Wilson*,
168 S.W.3d 802, 822 (Tex. 2005)..........................................................25, 35

*Cockrell v. Republic Mortgage Ins. Co.*,
817 S.W.2d 106, 115 (Tex. App. -- Dallas 1991, no pet. h.) ................................31

*Dameris v. Homestead Bank*,
495 S.W.2d 52, 55 (Tex. Civ. App. -- Houston [1st Dist.] 1973, no pet. h.) .........31

*David Berg & Co. v. Ravkind*,
375 S.W.2d 317, 321 (Tex. Civ. App. -- Tyler 1964, writ ref'd n.r.e.) .................31

*Dow Chem. Co. v. Francis*,
46 S.W.3d 237, 242 (Tex. 2001)................................................................24

*Favor Ministries, Inc. v. Buttross V., Inc.*,
2014 Lexis 13509 at *5-6 (Tex. App. -- Austin 2014, no pet. h.)..........................27

*Funes v. Villatoro*,
352 S.W.3d 200, 217 (Tex. App. -- Houston [14th Dist.] 2011, pet. denied)........36

*Game Sys. v. Forbes Hutton Leasing, Inc.*,
2011 Lexis 4098 at *56 (Tex. App. -- Fort Worth 2011, no pet. h.) ....................29

*Glauser v. State Farm Life Ins. Co.*,
1994 Lexis 2198 at *14
(Tex. App. -- Houston [1st Dist.] 1994, pet. denied)...........................19, 26, 30, 31

*Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc.*,
796 S.W.2d 763, 771 (Tex. App. -- Dallas 1990, pet. denied) ..............................36

*Herbert v. Herbert*,
754 S.W.2d 141, 144 (Tex. 1988).................................................................24, 33

*In re Estate of Wilson*,
252 S.W.3d 708, 713-714 (Tex. App. -- Texarkana 2008, no pet. h.) ..................29

*Johnson v. Enriquez*,
460 S.W.3d 669, 674 (Tex. App. -- El Paso 2015, no pet. h.) .........................23, 35

*Oake v. Collin County*,
692 S.W.2d 454, 455 (Tex. 1985).................................................................26

*Rego Co. v. Brannon*,
682 S.W.2d 677, 680
(Tex. App. -- Houston [1st Dist.] 1984, writ ref'd n.r.e.).................................24, 33

*Sava Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*,
128 S.W.3d 304, 323 (Tex. App. -- Dallas 2004, no pet. h.) ..........................25, 26

*Simmons v. Compania Financiera Libano*, S.A.,
830 S.W.2d 789, 791 (Tex. App. -- Houston [1st Dist.] 1992, pet. denied) ..........31

*Sterner v. Marathon Oil Co.*,
767 S.W.2d 686, 690 (Tex. 1989).................................................................24

*Thompson v. Chrysler First Business Credit Corp.*,
840 S.W.2d 25, 28 (Tex. App. -- Dallas 1992, no pet. h.) .........................19, 26, 30

*TMI, Inc. v. Brooks*,
225 S.W.3d 783, 794 (Tex. App. -- Houston [14th Dist.] 2007, pet. denied)........29

*Town North Nat'l Bank v. Broaddus*,
569 S.W.2d 489, 491 (Tex. 1978)......................................................................31

*Wal-Mart Stores, Inc. v. Canchola*,
121 S.W.3d 735, 739 (Tex. 2003)......................................................................25

*Williams v. Henderson*,
580 S.W.2d 37, 38-41
(Tex. Civ. App. -- Houston [1st Dist.], 1979, no pet. h.) .................................27, 30

*Winfield v. Dosohs I*,
1998 Lexis 4674 at * 8
(Tex. App. -- Houston [1st Dist.] 1998, no pet. h.) ...................................19, 26, 30

*Winslow v. Acker*,
781 S.W.2d 322, 328 (Tex. App. -- San Antonio 1989, pet. denied).....................36

STATUTES:
TEX. CIV. PRAC. & REM. CODE § 37.009 (Vernon 1998) ........................................25

OTHER:
2 McCormick & Ray, TEXAS LAW OF EVIDENCE 1671 ......................................31, 32

## ISSUES PRESENTED

Is there legally and factually sufficient evidence to support the jury's findings when appellant did not offer the promissory note at issue, the notice of assignment, and the calculations supporting its alleged damages into evidence thereby failing to meet its burden of proof?

Under Texas law, is it true that appellant failed to offer any evidence, or, alternatively, insufficient evidence showing what the alleged deficiency was at the time of *foreclosure* creating a defect in appellant's required burden of proof?

Because this court cannot substitute its opinion for the trier of fact merely because another result is possible, is it true that a reasonable jury could have found there was no default when Lender specifically agreed that it was its obligation to pay the property taxes, which it did not pay?

No. 04-15-00255-CV

---

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

---

SW Loan A, L.P.,
Appellant,

vs.

Anibal J. Duarte-Viera, Antonio P. Pardo, and
Edward M. Reiss,
Appellees.

---

**BRIEF OF THE APPELLEES**

---

On Appeal from the 131st District Court
Bexar County, Texas
Cause No. 2012-CI-12742

---

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

COMES NOW, Anibal J. Duarte-Viera, Antonio P. Pardo, and Edward M.

Reiss, and files this Brief of the Appellees and would show unto the Justices of

the Court of Appeals for the Fourth District of Texas at San Antonio as follows:

## STATEMENT OF FACTS

### A.
### PROCEDURAL AND FACTUAL BACKGROUND
### OF THE LITIGATION

On April 17, 2008, a Texas limited liability company, 1946 Property, LLC ("Borrower"), executed a promissory note ("Note") payable to Stillwater National Bank and Trust Company ("Lender") in the principal amount of $10,000,000. C.R. 4 (§ D, ¶ 7). The Note was secured by a Deed of Trust and an Assignment of Rents and Security Agreement. C.R. 4 (§ D, ¶ 7). The Note provided needed capital to Borrower in order to re-finance existing debt on an apartment project on the northeast side of San Antonio. R.R. Vol. 2 (104:7-10).

Anibal J. Duarte-Viera, Antonio P. Pardo, and Edward M. Reiss (defendants below and appellees herein) (collectively, "Guarantors") each executed a Limited Guaranty Agreement with the payment and performance obligation capped at $2,500,000. C.R. 4-5 (§ D, ¶ 8).

On May 23, 2011, Borrower signed a First Amendment – loan modification. R.R. Vol. 5 (43:6-9).

On May 24, 2011, Lender's attorney realized the escrow agreement was going to be insufficient to pay the property taxes owed to Bexar County; therefore, Lender wanted to increase the amount being escrowed. R.R. Vol. 5 (43:10-44:5); DX 1. Lender and Guarantors decided the better solution would be for Lender to continue escrowing the standard $20,000 per month and it would be *Lender's* obligation to pay half the taxes that were owed on an annual basis on December 1, 2011 from the escrow account. R.R. Vol. 5 (43:10-44:5); DX 1. The second property tax payment[1] would be due on June 30, 2011, which would also be paid out of escrow by Lender. R.R. Vol. 5 (43:10-44:5); DX 1. This would establish the parties' course of dealing going forward with respect to the payment of property taxes. DX 1.

On May 25, 2011, the agreement that Lender would make the semi-annual tax payments on Borrower's behalf was memorialized by email between appellee Pardo and Lender's Senior Vice President, Alan Goss. *See* DX 1; R.R. Vol. 5 (42:10-15).

---

[1] Of note, Bexar County specifically allows taxpayers to make semi-annual payments for property taxes. DX 1; DX 2.

In December of 2011, Lender assigned the Note to SW Loan A, L.P.[2] (the plaintiff below and appellant herein) ("appellant"). C.R. 5 (§ D, ¶ 9).

On June 5, 2012, appellant, through its loan servicer, sent Borrower a notice of default. PX 10. The basis for default was Borrower's failure to pay property taxes to Bexar County. *Id.* However, it was Lender who was contractually obligated to pay the taxes to Bexar County. *See* DX 1; R.R. Vol. 5 (43:10-44:5). Therefore, there was no default by Borrower. DX 1; R.R. Vol. 5 (43:10-44:5).

On July 3, 2012, appellant sent a second notice of default to Borrower. C.R. 5 (§ D, ¶ 11). In the second notice of default, appellant accelerated the past due sums demanding $9,468,043.19 no later than 5 p.m. on July 10, 2012. C.R. 358. Appellant accelerated the Note *before* Borrower's right to cure expired. R.R. Vol. 2 (156:19-22).

---

[2] Appellant is a "single purpose entity" and its purpose ended when the real estate securing the Note was sold. R.R. Vol. 2 (173:2-8). Appellant's corporate representative, Gary Redman, testified that he doubted whether appellant was even conducting business anymore at the time of trial. R.R. Vol. 2 (172:23-173:2-8).

On August 6, 2012, appellant filed suit against Guarantors under Cause No. 2012-CI-12742 in the 166th District Court for Bexar County, Texas seeking a deficiency judgment. C.R. 1.

On August 7, 2012, Borrower filed for bankruptcy under Chapter 11 in the Western District of Texas, San Antonio Division. *See generally* C.R. 38 (¶9); C.R. 151 (¶¶16-17). Appellant never put either the Borrower or the Guarantors on notice that it was relying upon any bankruptcy filing (which occurred *after* the lawsuit was already filed) as a basis for default. Accordingly, appellant cannot now claim the bankruptcy is an event of default because it never put Borrower on notice of that complaint.

On November 6, 2012, appellant foreclosed on the real property that secured the loan pursuant to a trustee's sale. C.R. 33 (¶ 7). Appellant claimed to have purchased the real property for a credit bid of $7,000,000. C.R. 48 (¶ 18). Appellant flipped the property and sold it in the $9,000,000 range. R.R. Vol. 2 (173:9-11; 174:9-13).

On December 1, 2014, the trial court called the case to trial. R.R. Vol. 1 (1).

On December 3, 2014, the attorneys gave their final arguments to the jury. C.R. 697-724 (jury charge and verdict form). The jury unanimously found in favor of Guarantors.[3]

On January 20, 2015, appellant filed a motion to disregard the jury's findings and for a JNOV (collectively, "the post-verdict motions"). C.R. 725.

On January 28, 2015, the trial court entered a final judgment in favor of Guarantors pursuant to the jury's unanimous findings. C.R. 768-770.

The post-verdict motions were heard on February 23, 2015. C.R. 779.

On March 20, 2015, the trial court denied the post-verdict motions. C.R. 796.

---

[3] The jury also awarded Guarantors their attorney's fees in the amount of $7,825 for defending the case through trial (C.R. 717); $7,500 in attorney's fees if the case was unsuccessfully appealed to the court of appeals (C.R. 717); and an additional $10,000 in fees if the matter is unsuccessfully appealed to the Texas Supreme Court. C.R. 718.

## B.
### APPELLANT FAILED TO MEET ITS BURDEN OF PROOF

## 1.
### DOCUMENTARY EVIDENCE IMPORTANT TO APPELLANT'S BURDEN WERE NOT ADMITTED INTO EVIDENCE

Appellant did not meet its burden of proof at trial. At its own choosing, appellant did not offer three key exhibits into evidence. *See* PX 4, PX 5, PX 16; R.R. Vol. 4 (42-43).

First, appellant did not offer the Note, the very contract it was suing upon, into evidence. *See* PX 5.

Second, appellant did not offer any calculations explaining how any alleged deficiency was computed, it did not offer the pay history of the loan, and the allowable expenses, offsets, and credits were not admitted into evidence. *See* PX 16. Accordingly, there were no calculations admitted from which a reasonable jury could make a finding appellant had been damaged as a proximate cause of any alleged wrongful act of Guarantors. *See id.*

Finally, appellant did not offer the "Notice of Assignment of Note" ("Notice") into evidence. *See* PX 4. The Notice, if admitted and believed to be

true, would have shown the jury that Borrower was allegedly notified by Lender of the assignment to appellant. *See id.*

Appellant's failure to meet its burden of proof explains the jury's findings. Indeed, the jury sent a note to the trial judge asking if PX 4 (Notice of Assignment of Note), PX 5 (Note), and PX 16 (calculations) were in evidence. R.R. Vol. 4 (42-43). The trial court instructed the jury that those documents had not been admitted and to continue their deliberations. R.R. Vol. 4 (43). The jury would unanimously find in the Guarantors' favor. C.R. 701-724.

## 2.
### A REASONABLE JURY COULD HAVE FOUND THERE WAS NO DEFAULT

On June 5, 2012, appellant sent Borrower a notice of default. PX 10. The sole basis for the alleged default was Borrower's failure to pay property taxes to Bexar County. *Id.* However, in May of 2011, and before Lender assigned the Note to appellant in December of 2011, Lender agreed to pay the taxes.[4] DX 1; R.R. Vol. 3 (45); Vol. 5 (42:10-45:16). Lender forgot to pay the

---

[4] In Bexar County, tax payers are allowed to "split" the payment of taxes i.e., the tax payments do not have to be fully funded in one payment. DX 2; R.R. Vol. 3 (p. 45).

16

taxes presumably because it was in the process of selling the Note. R.R. Vol. 3 (43-44); DX 1; Vol. 5 (42:10-45:16).

After the Note was assigned, appellee Pardo contacted Situs Asset Management[5] ("Situs") and asked why the taxes had not been paid – as the Lender had previously agreed. *Compare* DX 1, *with*, R.R. Vol. 3 (46), *and*, R.R. Vol. 5 (42:10-44:5). Despite that communication, neither Lender nor appellant paid the taxes per the parties' agreement. DX 1.

The reasonable inference left with the jury was that, because a miscommunication had occurred between Lender and appellant, the taxes were not paid resulting in Lender causing the default.

## 3.
### APPELLANT'S LIABILITY AND DAMAGES WITNESS HAD NO PERSONAL KNOWLEDGE OF THE TRANSACTION AND COULD NOT VERIFY THE AMOUNT ALLEGEDLY OWED

Appellant's liability and damages witness, Gary Redman, had no personal knowledge of the facts giving rise to the underlying lawsuit. *See* R.R. Vol. 2 (83 et seq.). Redman is Situs' asset manager. R.R. Vol. 2 (83:25-84:2).

---

[5] Situs is a real estate service company, who is not a party to this litigation.

Appellant designated Redman as its corporate representative. However, Redman has never been appellant's employee. R.R. Vol. 2 (91:20-24).

Redman did not participate in negotiating the Note, or any of the other documents at issue, and he did not prepare any of the documents that were in dispute at the trial. R.R. Vol. 2 (91:25-92:5). The various loan agreements were dated three years before Redman was even involved in this dispute. R.R. Vol. 2 (129:14-17). Redman admitted he has no personal knowledge as to what documents were exchanged in the assignment transaction between Lender and appellant. R.R. Vol. 2 (92:20-93:1).

Astonishingly, in a multi-million dollar alleged damage case, where the plaintiff maintains the burden of proof, Redman could not make up his mind on what amount of money Guarantors allegedly owed. R.R. Vol. 2 (164:4-12) (Redman admitted his own testimony was "inconsistent"). At trial, Redman claimed the Guarantors owed $3,482,872.63. R.R. Vol. 2 (124:25-125:4). However, $3,482,872.63 is indisputably inaccurate because appellant's own pleadings admit Guarantors' liability is capped at $2,500,000. C.R. 4-5 (§ D, ¶ 8). Redman impeached himself: he acknowledged having sworn the number

allegedly owed was $2,454,875.69 in a prior affidavit. R.R. Vol. 2 (125:9-11; 126:4-6). In a different affidavit altogether, Redman swore the number allegedly owed was $3,584,434.98. R.R. Vol. 2 (125:9-11; 126:4-6). These three numbers are materially different; these discrepancies are significant and cannot be explained away like rounding errors.

Despite the irreconcilable inconsistencies in Redman's testimony, he did not give *any* number that was allegedly owed by Guarantors on the date of *foreclosure*. [6] R.R. Vol. 2 (124:8-10; 124:25-125:4). Indeed, the foreclosure occurred on November 6, 2012. C.R. 33 (¶ 7). However, Redman's number of $3,482,872.63 used November 17, 2012 as the operative date. R.R. Vol. 2 (124:8-125:4). Thus, Redman used the wrong date – a date that kills the appellant's claims under the case-law in a sufficiency of the evidence appeal.[7]

---

[6] In Texas, it is well settled that, in order to be entitled to a deficiency judgment, appellant had to prove, *inter alia*, the amount due on the note at the time of *foreclosure*. *See Thompson v. Chrysler First Business Credit Corp.*, 840 S.W.2d 25, 28 (Tex. App. -- Dallas 1992, no pet. h.); *Carruth Mortgage Corp. v. Ford*, 630 S.W.2d 897, 899 (Tex. App. -- Houston [1st Dist.] 1982, no pet. h.); *Glauser v. State Farm Life Ins. Co.*, 1994 Lexis 2198 at *14 (Tex. App. -- Houston [1st Dist.] 1994, pet. denied); *accord Winfield v. Dosohs I*, 1998 Lexis 4674 at * 8 (Tex. App. -- Houston [1st Dist.] 1998, no pet. h.) (holding same) [citations omitted].

[7] *See* f.n. 6, *supra*.

Redman gave no testimony – literally none – explaining how these amounts were calculated. Redman simply gave a conclusory dollar amount unsupported by any formula. In testifying to appellant's alleged damages, Redman read from a spreadsheet prepared by Situs' asset manager, Tim Murphy. R.R. Vol. 2 (123:22-124:1). Murphy did not even testify at the trial; and, furthermore, Murphy's hearsay spreadsheet that Redman partially read from to the jury was not even admitted into evidence. PX 16 (not admitted).

On cross examination, Redman admitted that all he was doing was reading from the documents the appellant's attorneys were handing him on the witness stand; no different than a juror or anyone else would do – who had no personal knowledge of the case. R.R. Vol. 2 (130:14-19).

Examples of Redman's conflicting and unsubstantiated testimony during the trial are many and include the following:

*   Admission that appellant provided erroneous and inconsistent payoff amounts to Borrower and Guarantors [R.R. Vol. 2 (164:4-10)];

*   Appellant claimed that Borrower defaulted because of a code or ordinance violation. R.R. Vol. 2 (115:14-116:4).

20

However, upon cross examination, Redman admitted no evidence of a violation was produced or disclosed in discovery [R.R. Vol. 2 (157:5-25)];

* There were a number of documents Redman admitted existed and that were germane to the litigation, but were not produced – however, Redman could go back to the office and "whip [the documents] up." R.R. Vol. 2 (149:17-24); R.R. Vol. 2 (145:5-146:1).

* Redman had no knowledge of a specific default date, but that appellant just "picked a date." R.R. Vol. 2 (162:6-24; 163:3-9).

In summary, Redman could not testify to how or when the loan documents were created, he did not participate in the negotiation of the assignment, he lacked any knowledge of how the documents were maintained prior to the assignment, and he could not agree – even with himself – as to the amount that was allegedly owed. Redman's only knowledge of the transaction was that he acquired the loan portfolio from a law firm along with a batch of other loans. *See* R.R. Vol. 2 (131:21-25).

A reasonable jury could have found there was no evidence, or, alternatively, insufficient evidence that appellant conclusively met its burden of proof.

## SUMMARY OF ARGUMENT

Appellant failed to meet its burden of proof. Indeed, appellant did not offer the Note (the very contract it was suing on) into evidence, it did not offer the Notice of Assignment into evidence, and it did not offer its damage calculations into evidence. During its deliberations, the jury specifically asked for these documents, but they were not admitted.

In order to be entitled to a deficiency judgment, appellant had to prove, *inter alia*, the amount due on the Note at the time of *foreclosure*. Appellant's liability and damage witness at trial, Gary Redman, offered no opinion testimony on what the alleged damages were on the date of *foreclosure*. On the contrary, Redman offered three different numbers – a moving target – that were admittedly "inconsistent" and unsupported by any calculations.

Appellant's first notice of default claimed that Borrower failed to pay the property taxes; however, Lender had agreed to pay those taxes in an amended

agreement following the execution of the loan modification. Despite Lender's agreement to pay the taxes, neither the Lender nor appellant paid those taxes as the amended contract required. Accordingly, appellant caused the default.

As the sole judges of the credibility and the weight to be afforded the witnesses' testimony, the jury reasonably concluded there was a defect in appellant's proof. With all inferences resolved in favor of the jury's findings, there is factually and legally sufficient evidence to support the take nothing judgment in Guarantors' favor. The trial court's judgment should be affirmed.

## STANDARDS OF REVIEW

### A.
#### FACTUAL SUFFICIENCY

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof at trial, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *See, e.g., Johnson v. Enriquez*, 460 S.W.3d 669, 674 (Tex. App. -- El Paso 2015, no pet. h.). The appellate court will set aside the adverse finding only if, after considering and weighing all the evidence, the court of appeals concludes the evidence is so weak or the finding is so against the great weight

23

and preponderance of the evidence that it is clearly wrong and manifestly unjust. *See id.* at 675 (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)).

Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, in conducting a factual sufficiency review, the court of appeals may not substitute its opinion for that of the trier of fact merely because it might have reached a different fact conclusion. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988); *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex. App. -- Houston [1st Dist.] 1984, writ ref'd n.r.e.).

## B.
### LEGAL SUFFICIENCY

Where, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, it must show that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). When a party challenges the legal sufficiency of the evidence supporting a jury finding, the appellate court considers the evidence in the light most favorable to the finding

and indulges every reasonable inference that supports it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

If the evidence would permit reasonable and fair-minded people to reach the finding under review, the legal sufficiency challenge fails. *Id.* at 827. If more than a scintilla of evidence supports the finding, the no-evidence challenge must fail. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). If the evidence at trial would enable reasonable minds to differ in their conclusions, a reviewing court must allow the jury to do so and not substitute its judgment, so long as the evidence falls within a zone of reasonable disagreement. *See City of Keller*, 168 S.W.3d at 822.

## C.
### ATTORNEY'S FEES UNDER THE DECLARATORY JUDGMENT STATUTE

The Declaratory Judgment Act permits the trial court to award reasonable and necessary attorney's fees as are equitable and just. *See* TEX. CIV. PRAC. & REM. CODE § 37.009 (Vernon 1998). The granting of attorney's fees in a declaratory judgment action is within the discretion of the trial court, and its decision will not be reversed on appeal absent a clear abuse of discretion. *Sava*

*Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 323 (Tex. App. -- Dallas 2004, no pet. h.) (citing *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985)).

ARGUMENT & AUTHORITIES

A.<br>
<u>APPELLANT FAILED TO PROVE THE AMOUNT DUE<br>
ON THE NOTE AT THE TIME OF FORECLOSURE</u>

In Texas, it is well settled that, in order to be entitled to a deficiency judgment, appellant had to prove, *inter alia*, the amount due on the note at the time of <u>foreclosure</u>. *See Thompson v. Chrysler First Business Credit Corp.*, 840 S.W.2d 25, 28 (Tex. App. -- Dallas 1992, no pet. h.); *Carruth Mortgage Corp. v. Ford*, 630 S.W.2d 897, 899 (Tex. App. -- Houston [1st Dist.] 1982, no pet. h.); *Glauser v. State Farm Life Ins. Co.*, 1994 Lexis 2198 at *14 (Tex. App. -- Houston [1st Dist.] 1994, pet. denied) ("Where a validly executed note goes into default and there is a trustee's sale of the security for the note, the mortgagee must prove the … amount due on the note at the time of foreclosure …") [citations omitted]; *accord Winfield v. Dosohs I*, 1998 Lexis 4674 at * 8 (Tex. App. -- Houston [1st Dist.] 1998, no pet. h.) (holding same) [citations omitted].

*Williams v. Henderson*, 580 S.W.2d 37, 38-41 (Tex. Civ. App. -- Houston [1st Dist.], 1979, no pet. h.), is factually analogous to the present case. There, Williams sued Henderson to recover a deficiency after a trustee's sale of property securing a note. *Id.* at 38. Henderson defaulted on the note, leaving a contested balance of approximately thirteen thousand dollars. *Id.* The trustee foreclosed and the land was sold back to Williams for five thousand dollars. *Id.* The trustee deducted the expense of the sale and the depreciation from the balance creating a deficiency of approximately nine thousand dollars. *Id.*

At trial, Williams did not offer any calculations into evidence. *Id.* In addition, Williams could not state the exact amount of money due and owing at the time of foreclosure. *See id.* at 39 ("[I]n order to recover in this case, Williams would have to prove the amount due on the note at the time of foreclosure . . ."). Because Williams failed to prove the amount owing at the time of foreclosure, the trial court held that Williams could not recover a deficiency from Henderson. *Id.* at 39. The court of appeals affirmed. *Id*; *see also Favor Ministries, Inc. v. Buttross V., Inc.*, 2014 Lexis 13509 at *5-6 (Tex. App. -- Austin 2014, no pet. h.) (reversing a summary judgment and holding

27

that lender failed to conclusively prove the amount due and owing at the time of the foreclosure).

Williams can be analogized to the case at bar. Here, appellant provided no testimony of the amount allegedly due and owing at the time of *foreclosure*. The foreclosure occurred on November 6, 2012. C.R. 33 (¶ 7). Redman testified to the amount allegedly owed on November 17, 2012. R.R. Vol. 2 (124:8-10). Perhaps recognizing that he was using the wrong date, Redman attempted to explain away his mistake by saying this is "*the way the system was set up.*" R.R. Vol. 2 (124:17-20) (emphasis added). That amount, according to Redman, is $3,482,872.63. R.R. Vol. 2 (124:25-125:4). However, this number cannot be right – even assuming *arguendo* Redman had used the correct date – because appellant's own pleadings admit Guarantors' liability is capped at $2,500,000. C.R. 4-5 (§ D, ¶ 8).

Redman testified that, despite using the wrong date, he "*believed*"[8] his number was accurate. R.R. Vol. 2 (124:25-125:4). Redman's "belief" is no

[8] Q: Mr. Redman, do you **believe** that the correct amount of the deficiency on the principal of the loan after the $7 million credited was applied – after that was applied is the $3,482,872.63?

evidence. *See In re Estate of Wilson*, 252 S.W.3d 708, 713-714 (Tex. App. -- Texarkana 2008, no pet. h.) ("It is well established under Texas case law that an affidavit, based on the affiant's 'best knowledge and *belief*,' is *no evidence* of the facts asserted.") [citations omitted]; *e.g., Game Sys. v. Forbes Hutton Leasing, Inc.*, 2011 Lexis 4098 at *56 (Tex. App. -- Fort Worth 2011, no pet. h.) ("Weaver's statement of his *belief* about to whom Seven Sky made payments is *no evidence* because it is conclusory"); *see also TMI, Inc. v. Brooks*, 225 S.W.3d 783, 794 (Tex. App. -- Houston [14th Dist.] 2007, pet. denied) ("The homeowners' affidavits attesting to their understanding of the scope of the arbitration clause and their *belief* Trendmaker's interpretation of that arbitration clause is wrong constitute *no evidence* as they (1) are not readily controvertible, (2) are not based on the affiants' personal knowledge and (3) do not unqualifiedly represent that the alleged 'facts' are true.").

Akin to the problems of proof in *Williams*, the calculations in the instant case were *not* admitted into evidence. *See* PX 16 (marked, but not admitted). Redman provided three different numbers that were allegedly owed. R.R. Vol.

---

A:      Yes, and that includes interest and advances.

*See* R.R. Vol. 2 (125:25-126:3) (emphasis added).

29

2 (164:4-12). Redman admitted that his figures – a constantly moving target - were "inconsistent." R.R. Vol. 2 (164:4-7). The inconsistencies in Redman's own testimony underscored the point that he had no personal knowledge of the transaction. R.R. Vol. 2 (129:14-17; 130:14-19; 159:10-14). Redman testified:

> Q: On the amounts you're seeking in this case, would you agree with me that you've been a bit **inconsistent** –
>
> A: **Sure**.
>
> Q: -- on what you're claiming is owed?
>
> A: **I'll admit that the affidavits have three different numbers, yes**.

R.R. Vol. 2 (164:4-10) (emphasis added).

Here, a reasonable jury could have and, in fact, did conclude appellant failed to prove the amount allegedly due on the Note at the time of foreclosure. Because appellant failed to conclusively prove each and every element of its claim,[9] the jury's verdict is supported by the evidence and must be upheld.

---

[9] *Thompson*, 840 S.W.2d at 28; *Carruth Mortgage Corp.*, 630 S.W.2d at 899; *Glauser*, 1994 Lexis 2198 at *14; *Winfield*, 1998 Lexis 4674 at * 8; *Williams*, 580 S.W.2d at 38-41.

## B.
## A Reasonable Jury Could have Concluded There was No Default

The general rule is that a loan agreement that is clear and express in its terms, cannot be varied by parol agreements or representations of a payee that a maker will not be liable for payment. *Town North Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 491 (Tex. 1978); *Simmons v. Compania Financiera Libano*, S.A., 830 S.W.2d 789, 791 (Tex. App. -- Houston [1st Dist.] 1992, pet. denied). "However, acts and conduct of the parties *after* the execution of the note do not violate the parol evidence rule." *See Glauser*, 1994 Lexis 2198 at * 20 (emphasis added) (citing *Cockrell v. Republic Mortgage Ins. Co.*, 817 S.W.2d 106, 115 (Tex. App. -- Dallas 1991, no pet. h.) (discharge by means of some performance acceptable to holder of note may always be shown); *Dameris v. Homestead Bank*, 495 S.W.2d 52, 55 (Tex. Civ. App. -- Houston [1st Dist.] 1973, no pet. h.) (discharge by means of some performance acceptable to holder of note may always be shown); *David Berg & Co. v. Ravkind*, 375 S.W.2d 317, 321 (Tex. Civ. App. -- Tyler 1964, writ ref'd n.r.e.) (quoting 2 McCormick & Ray, Texas Law

OF EVIDENCE 1671: nothing in the parol evidence rule prevents written transactions from being later modified by a new, oral agreement)).

In the case at bar, the trial court admitted DX 1 into evidence, which is a subsequent agreement between Lender and Borrower.[10]  DX 1 required Lender to pay the taxes on the property.  *See* DX 1.  Pardo testified:

Q:  Can you describe to me what agreement was made in that e-mail chain [DX 1]?

A:  The e-mail started when the bank's attorney realized that the escrow agreement that they had put together in the loan modification was not going to be sufficient to pay the taxes at the end of January so they wanted to increase the amount that they were escrowing for.  Going back and forth, we determined that a better solution would be for them to continue escrowing at $20,000 a month and pay half the taxes on December 1st.  They would have had $120,000 in the account by that time.  Pay the [sic] half the taxes on December 1st and the second half of the taxes would have been due on June 30th.  **They agreed to that.  So we were operating under that assumption back in May 2011.**

---

[10] Appellant does not claim that the trial judge erred in admitting DX 1.

Q: And, to your knowledge, did Stillwater Bank [Lender] pay the taxes in November of 2011?

A: **What happened was that at some point around the same time they were supposed to pay taxes, they were selling the note and they forgot to pay the taxes.**

*See* R.R. Vol. 5 (43:10-44:5) (emphasis added).

Based on Pardo's testimony, and the admission of DX 1 into evidence, a reasonably prudent jury could have found that Borrower did not default.

## C.
### THE STANDARD OF REVIEW IS DISPOSITIVE

## 1.
### THERE IS FACTUALLY SUFFICIENT EVIDENCE

Because the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, the court of appeals may not substitute its opinion for the jury merely because it might have reached a different result. *Herbert*, 754 S.W.2d at 144 (factual sufficiency review); *Rego Co.*, 682 S.W.2d at 680 (same).

Here, appellant sought millions of dollars in damages, but it brought the jury only scant proof to support such an award. During its deliberations, the jury specifically asked the trial judge if the Notice of Assignment of Note (PX

33

4), the Note itself (PX 5), and the alleged damage calculations (PX 16) were in evidence. R.R. Vol. 4 (42-43). Because those documents were not admitted, there was insufficient proof to support either a liability or a damage finding against Guarantors.

A reasonably prudent jury could have easily found that (1) appellant's failure to admit the Note, the very contract it was suing upon, was a defect in its proof; (2) appellant's failure to prove damages to a reasonable degree of certainty was a defect in its proof; (3) appellant's failure to admit any calculations showing how its alleged damages were computed was a defect in its proof; (4) appellant's failure to provide any basis for an amount of money owed by Guarantors on the date of foreclosure was a defect in its proof; (5) appellant's failure to call any witnesses who actually had personal knowledge of the transaction with Lender was a defect in its proof; (5) appellant's reliance upon Borrower's alleged failure to pay property taxes as a basis for a default when, in reality, Lender had agreed to pay those taxes was a defect in its proof; (6) and/or Redman's lack of credibility and inability to answer questions on cross examination was a defect in its proof.

Based upon the record before this court, it cannot be credibly argued that the jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Johnson*, 460 S.W.3d at 674. The trial court's judgment should be affirmed.

## 2.
### THERE IS LEGALLY SUFFICIENT EVIDENCE

Where, as here, the appellant attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, it must show that the evidence *conclusively* established all vital facts in support of the issue. *Sterner*, 767 S.W.2d at 690. In the light most favorable to the Guarantors, and indulging all reasonable inferences in favor of the jury's findings, there is legally sufficient evidence to support the take nothing award. *City of Keller*, 168 S.W.3d at 822.

In the present case, appellant not only failed to conclusively prove an amount due and owing on the date of the foreclosure, but it provided the jury with absolutely no evidence to make such a finding. As noted above, Redman used the wrong date in his damages testimony. Redman provided three different and unexplained damage figures – making his own testimony inconsistent and not credible. Appellant failed to conclusively prove a default.

With all reasonable inferences resolved in favor of the jury's findings, the trial court's judgment should be affirmed.

## D.
### THE TRIAL COURT ACTED WITHIN ITS DISCRETION IN AWARDING ATTORNEY'S FEES

In *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998), the Supreme Court explained that "the Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Id.* at 21.

Indeed, an award of attorney's fees in a declaratory judgment action is highly discretionary and is not limited to the prevailing party. *See Funes v. Villatoro*, 352 S.W.3d 200, 217 (Tex. App. -- Houston [14th Dist.] 2011, pet. denied); *Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc.*, 796 S.W.2d 763, 771 (Tex. App. -- Dallas 1990, pet. denied).

In *Winslow v. Acker*, 781 S.W.2d 322, 328 (Tex. App. -- San Antonio 1989, pet. denied), the plaintiffs filed suit to recover their share of overriding

royalties in a mineral estate. The defendants filed a counterclaim to obtain a declaration of their right to the overriding royalties and for attorney's fees under the Declaratory Judgments Act. The plaintiffs filed a motion to strike defendants' counterclaim for declaratory relief and for attorney's fees; the trial court denied the motion to strike. *Id.* at 323. The court of appeals stated that "when a declaratory judgment counterclaim has greater ramifications than the original suit, the court may allow the counterclaim." *Id.* at 328.

In the present case, the Guarantors' action for declaratory relief was not a "transparent attempt to obtain attorney fees to which they otherwise were not entitled" as appellant argues in its Brief. *See* Appellant Brief (p. 58, § 5(B), ¶ 2)). On the contrary, Guarantors are allowed under the Declaratory Judgment Act to ask the trial court to declare the rights and obligations of the parties in so far as appellant was seeking relief beyond the principal and interest payments that were allegedly requested in the underlying Note. C.R. 590. That is a request for relief separate and apart from the appellant's affirmative claims in the underlying lawsuit.

The trial court acted within its broad discretion in awarding Guarantors a minimal amount of attorney's fees. There is no error. The trial court's judgment should be affirmed.

## CONCLUSION

In conclusion, the trial court's judgment is supported by factually and legally sufficient evidence. In addition, the trial court acted well within its discretion in awarding the Guarantors their reasonable and necessary attorney's fees. Accordingly, the trial court's judgment should be affirmed.

**WHEREFORE, PREMISES CONSIDERED**, Anibal J. Duarte-Viera, Antonio P. Pardo, and Edward M. Reiss, appellees herein, pray that this court affirm the trial court's judgment and that they be awarded their costs and attorney's fees in this appeal.

Respectfully Submitted,

DEANS & LYONS, LLP

_____

Brian P. Lauten
State Bar No. 24031603
blauten@deanslyons.com
325 N. St. Paul Street, Ste. 1500
Dallas, Texas 75201
(214) 965-8500 telephone
(214) 965-8505 facsimile
**ATTORNEYS FOR THE
APPELLEES**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14 point for text and 12 point for footnotes. This document also complies with the word count limitations of TEX. R. APP. P. 9.4(i)(2)(d), if applicable, because it contains 5,801 words, excluding any subparts exempted by Tex. R. App. P. 9.4(i)(l).

_____

Brian P. Lauten

## CERTIFICATE OF SERVICE

In accordance with Rule 9.5(e) of the Texas Rules of Appellate Procedure, I hereby certify that a true and correct copy of this Brief of the Appellees was served on all counsel of record via the electronic filing case manager system and by first class United States mail postage prepaid on this the 7th day of October, 2015 to the following recipients:

John T. Gerhart, Jr., Esq.
Bryan C. Bond, Esq.
HUNTON & WILLIAMS, LLP
1445 Ross Avenue, Ste. 3700
Dallas, Texas 75202

_____
Brian P. Lauten